UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

| | |
|---|---|
| In Re Application of | Case No. _____ |
| BANK J. SAFRA SARASIN AG | **DECLARATION OF** <br> **TOM CLAASSENS** |
| For an Order to conduct discovery for use in a foreign proceeding. | |

------------------------------------------------------------------x

TOM CLAASSENS, pursuant to 28 U.S.C. § 1746, declares as follows:

1.  I am a partner of Loyens & Loeff N.V. I submit this affirmation in support of the application by Bank J. Safra Sarasin AG ("Bank Sarasin") for an order pursuant to 28 U.S.C. § 1782 to take discovery in aid of a proceeding pending in the Hague Court of Appeal in the Netherlands, styled *Bank J. Safra Sarasin AG v. AIG Europe S.A.*, Case No. 200.341.205/01 (the "Hague Litigation"). I am counsel to Bank Sarasin in that proceeding.

2.  The Petition seeks discovery of documents and testimony from American International Group, Inc. ("AIG, Inc."), headquartered at 1271 Avenue of the Americas, New York, New York, 10020.

3.  Unless expressly noted, I have personal knowledge of the matters I address in this declaration.

## THE ARBITRATION

4.  Bank Sarasin initiated arbitration proceedings against AIG Europe in December 2017 in Rotterdam, the Netherlands.

5.  Bank Sarasin sought coverage under an insurance policy for losses incurred in connection with customer claims arising out of certain investments in outside funds. The customer claims allege in effect that Bank Sarasin did not conduct appropriate due diligence, and did not

disclose the risks of the investments, claims covered by the insurance policies. The insurance policies at issue are governed by Dutch law and the arbitration was administered by the Netherlands Arbitration Institute (the "NAI").

6. AIG Europe nominated attorney Jan ter Meer ("Ter Meer") as a party arbitrator.

7. On December 19, 2017, Ter Meer accepted his appointment and made the following disclosures in accordance with Article 11 paragraph 3 of the NAI Rules applicable to the Arbitration (the "Ter Meer Disclosure"):

    a. His law firm, Cox Ten Bruggencate, "occasionally" represents AIG in *transportation and logistics cases*.

    b. Cox Ten Bruggencate is included on AIG's panel "of Dutch law firms for legal services in relation to *Marine Insurance (not for other lines of business)*."

    c. Ter Meer is currently acting personally for a large number of insurers, including AIG, in a coverage dispute under a professional liability insurance policy. In doing so, Ter Meer is primarily in contact with the "leading insurers" other than AIG and Allianz.

8. Bank Sarasin did not challenge Ter Meer based on these disclosures, concluding that the relationship between Cox Ten Bruggencate and AIG was sporadic and very limited in scope, and was not likely to influence Ter Meer's judgment in the arbitration proceeding.

9. Bank Sarasin nominated Willem van Baren to the tribunal. Sjef Huisman was subsequently appointed to the tribunal as the third arbitrator.

10. On January 6, 2024, the arbitral tribunal denied Bank Sarasin's claims for insurance coverage and ordered Bank Sarasin to pay more than 18 million euros in costs to AIG Europe (the "Award").

### BANK SARASIN'S DISCOVERY OF THE ARBITRATOR'S UNDISCLOSED CONFLICTS

11. After the Award was issued, Bank Sarasin learned that the ties between Ter Meer's law firm, Cox Ten Bruggencate, and AIG, were far greater than disclosed by Ter Meer.

12. Whereas Ter Meer had stated to Bank Sarasin that Cox Ten Bruggencate acts "occasionally" for AIG in matters concerning transportation and logistics, and is on AIG's panel for marine insurance matters, Cox Ten Bruggencate had separately disclosed that AIG is a "major client," had listed AIG as one of four "key clients," and stated that it has a "longstanding relationship" that "[n]ame partners Joeri Cox and Carlijn ten Bruggencate have developed" with AIG, among others.

13. Bank Sarasin discovered this information in a legal publication called the "Legal 500" for Insurance law. This publication is compiled on the basis of information provided by the firms themselves. As explained by the publication: "Each year we write to firms inviting them to provide information on their specialist areas of practice and requesting specific details of work undertaken in the preceding year (some of which will be confidential and not in the public domain)."

14. Cox Ten Bruggencate identified AIG as a "key client" in the Law 500 publication for the years 2020, 2021, 2022, 2023 and 2024, in both the insurance and transportation categories.

15. These representations are inconsistent with the disclosure made by Ter Meer in connection with the arbitration, and immediately raised serious doubts as to the impartiality of Ter Meer and the accuracy of his disclosures.

### THE HAGUE COURT OF APPEAL LITIGATION

16. On April 8, 2024, Bank Sarasin filed a Writ of Summons (the "Writ") before the Court of Appeal of The Hague in the Netherlands (the "Hague Litigation"). A true and accurate

English translation of this filing is attached as Exhibit A. The Writ seeks to set aside the Award on the ground that it was not made by an independent and impartial arbitral tribunal.

17. Bank Sarasin seeks this relief under Section 1065(1) of the Dutch Code of Civil Procedure ("DCCP"), which provides that an arbitral award may be set aside if "the judgment, or the manner in which it was reached [is] contrary to public policy." One ground to set aside an arbitral award under this section is when the arbitral award was not made by an independent and impartial arbitral tribunal.

18. As set forth in the Writ, under Netherlands law, an arbitral award may be set aside if (i) facts and circumstances have come to light on the basis of which it must be assumed that an arbitrator was not impartial or independent at the time the award was rendered or (ii) given the circumstances of the case, there is such serious doubt as to his impartiality or independence that it would be unacceptable to uphold the arbitral award.

19. Courts in the Netherlands apply an objective test to determine impartiality. The relevant inquiry focuses on whether professional, financial or personal ties between the judge/arbitrator and a party give rise to objectively justifiable doubts about the judge/arbitrator's impartiality.

20. AIG Europe filed an opposition to the Writ on July 30, 2024 ("AIG Europe Opp."). A true and accurate English translation of this filing is attached as Exhibit B.

21. Bank Sarasin filed a reply on September 10, 2024 ("Reply"). A true and accurate English transition of this filing is attached as Exhibit C.

22. AIG Europe filed a rejoinder on November 19, 2024 ("AIG Europe Rejoinder"). A true and accurate English translation of this filing is attached as Exhibit D.

## AIG'S CLAIM THAT IT LACKS ANY INFORMATION REGARDING ITS FINANCIAL RELATIONSHIP WITH COX TEN BRUGGENCATE

23. Bank Sarasin submits in its Writ that the actual relationship between Cox Ten Bruggencate and AIG as disclosed by Cox Ten Bruggencate raises objectively justifiable doubts about Ter Meer's impartiality and independence under Dutch law.

24. Bank Sarasin also seeks in the Hague Litigation to have AIG Europe disclose the scope of its relationship with Cox Ten Bruggencate, including the total of fees paid to the firm leading up to and during the arbitration. Under Section 150 of the Dutch Code of Civil Procedure, AIG Europe was required to substantiate its position that Bank Sarasin's contention, that Cox Ten Bruggencate realized significant income from its relationship with AIG, is "purely unfounded speculation." This requirement includes submitting a reasoned defense, and stating the available evidence. This is particularly so because all of this information is in the possession of the AIG organization.

25. AIG Europe has refused to disclose any information concerning its relationship with Ter Meer or his law firm, Cox Ten Bruggencate. For example, AIG Europe has not provided any records showing the compensation paid to Cox Ten Bruggencate during the years leading up to the arbitration and during the arbitration itself.

26. AIG Europe, which is based in Luxembourg, says that it disputes Bank Sarasin's allegations, but refuses to provide any information regarding its relationship with the arbitrator's law firm, and indeed now claims that it cannot locate in its records any documentation of its financial relationship with the law firm.

27. In its Rejoinder, AIG Europe claimed that it could not obtain such information: "AIG has looked at what information it can extract from its systems in the relevant years, but because of the way it keeps records, it cannot get an accurate understanding of how much it paid"

5

Cox Ten Bruggencate. Given that the Award was issued in January 2024, this assertion lacks credibility, but in any event is likely based on the fact that legal invoices are paid through AIG headquarters in New York.

28. Similarly, AIG Europe states that "AIG does not have a conclusive understanding of the data on (the extent of) the financial relationship between AIG and CXTB in the relevant years . . . ."

29. The parent company of AIG Europe is AIG, Inc., a large multinational insurance corporation headquartered in New York. It is implausible that AIG as an organization does not maintain records of its payments to law firms such as Cox Ten Bruggencate, and in light of AIG Europe's assertion that it does not possess such records, it is likely that such payments are made from AIG's headquarters in New York. Bank Sarasin thus seeks to obtain this information directly from the company that likely has it, AIG, Inc., which is the global parent company of AIG Europe and other subsidiaries located throughout the world.

30. AIG Inc. was not a party to the underlying arbitration and is not a party to the Hague Litigation.

## THE NEED FOR DISCOVERY

31. At the heart of arbitration under Dutch law is the requirement that each arbitrator be impartial and independent. This requirement also holds true for arbitrators designated by a party. Arbitrators are required to make full and accurate disclosures regarding their potential conflicts. Failure to have an impartial tribunal threatens the integrity of the arbitral process.

32. Here, one party to the arbitration, my client Bank Sarasin, believes based on previously undisclosed information, that the arbitrator designated by AIG was objectively not impartial. Based on the evidence submitted by Bank Sarasin, AIG Europe risks having the Award set aside under Dutch law. It would presumably have been relatively easy for the AIG organization

6

to produce evidence concerning the scope of its relationship with the Cox Ten Bruggencate law firm. Instead, AIG Europe has gone to great lengths to avoid producing such information, including asserting that it cannot find it.

33. AIG Europe's claim that it does not possess the information concerning AIG's relationship with Cox Ten Bruggencate means that even if ordered to provide substantiation, it will not do so with the excuse that the documentation is not in its possession. Bank Sarasin will be deprived of this clearly relevant evidence, to its substantial prejudice. AIG Europe will have successfully avoided any inquiry into what appears to be a material relationship between AIG and Ter Meer's law firm that was concealed from Bank Sarasin.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: Amsterdam, The Netherlands
       August 26, 2025

_____
TOM CLAASSENS